LESLIE C. WEAD, AS GENERAL GUARDIAN, ETC., OF CARRIE J. HORTON, AND CARRIE J. HORTON, BY LESLIE C. WEAD, HER GUARDIAN AD LITEM, APPELLANTS, *v.* WILLIAM P. CANTWELL, AS SURVIVING EXECUTOR, ETC., OF ADALINE W. HORTON, DECEASED, AND THE FIRST CONGREGA- TIONAL SOCIETY OF THE TOWN OF MALONE, RESPONDENTS.

*Action for the judicial construction of a will — when it should not be brought by a legatee, devisee or cestui que trust — when the guardian of an infant should not join as a plaintiff in such action — costs of an action brought by the guardian and the infant cestui que trust — direction for their payment.*

A devisee, legatee or *cestui que trust* should not be allowed to bring an action to procure a judicial construction of a will, where the rights of the devisee, legatee or *cestui que trust* are clear and not disputed by the executor, and the provisions of the will requiring construction are only to take effect upon the happening of contingent events, which may never occur, and may affect persons not yet in being.

The general guardian of an infant, entitled under a will to receive during the infant's life the rents and profits of a trust fund created by the will, should not be joined with the infant as a party plaintiff in an action brought to obtain a judicial construction of the will, as he has no interest in the matter.

In an action brought by an infant *cestui que trust* and her guardian to obtain a construction of a will, the court sustained a demurrer interposed to the complaint, and directed the costs and an extra allowance to be paid out of the income of the trust fund.

*Held*, that this direction was, possibly, contrary to the statute (1 R. S., m. p. 780, § 63), and certainly unjust.

That the costs should be paid by the plaintiffs, the guardian *ad litem* being responsible for the amount thereof.

APPEAL from a judgment, entered upon an order sustaining demurrers interposed to the complaint, and from an order granting an extra allowance.

*Leslie W. Russell*, for the appellants.

*W. P. Cantwell*, executor, in person, and *Joseph R. Flanders*, for the executor, respondent.

*Gilbert & Kellas*, for the Congregational Society, respondent.

LEARNED, P. J.:

Actions to construe wills are sustained on the ground that there is some trust to be performed; and that therefore the trustees are entitled to the direction of the court in the discharge of their duties. As executors have a *quasi* trust as to personal property, they are entitled to similar direction from the court. The trustees or executors may apply for such construction and advice themselves; or the *cestui que trust* may apply. And hence the legatee or distributee, as such *cestui que trust*. (*Wager* v. *Wager*, 89 N. Y., 161.)

But while the court has jurisdiction of this class of actions, instituted by a legatee or an executor, it does not follow that it would be proper in every case for a legatee to bring such an action. A will may be so simple as to require no construction. Or the executor and all parties interested may agree in its meaning. Clearly, in such cases, it would be improper to sustain an action of this kind. Or, while some parts of the will might be doubtful, it would be improper for a legatee, whose rights were clear and were not disputed by the executors, to bring an action for the construction of the will. (*Chipman* v. *Montgomery*, 63 N. Y., 230.)

The present action is brought by an infant, Carrie J. Horton, and her general guardian. They ask the construction of the will of her mother.

After the first and second clauses, which provide for payment of debts, for a legacy to the husband and for care of cemetery lots, the third clause gives all the rest of testator's property to the executors in trust to receive the rents and profits during the life of Carrie, and during her minority to apply the same, or so much as may be necessary, to her support, maintenance and education; and after

her minority to pay over to her from time to time said rents and profits.

The fourth clause gives the whole of the property, after Carrie's death, to her children, in equal proportions, if she shall die leaving issue, and if all her children shall then be living or if none of her children shall have died leaving issue at the time of "*my*" death. If any of her children or descendants shall have died leaving issue, such issue to take the share which the parent would have taken by the will if living at the time of "*my*" death. It will strike any one immediately that the word *my* in each case is probably a clerical error for *her*. And so, at the proper time, it will probably be considered.

The fifth clause directs that in case Carrie should die without issue, the executors are immediately to sell and dispose of all the property. Five thousand dollars is to be held by them in trust as a perpetual fund for the poor of Malone village.

The sixth clause gives the residue, after deducting said $5,000, to the First Congregational Society of Malone.

The seventh clause gives a power to the executors at any time to sell and dispose of real estate, and the eighth appoints executors. A codicil gives the income of $5,000 for life to the husband. The husband is dead.

The complaint avers that the will and codicil are doubtful and uncertain ; that various clauses are in derogation of the statutes ; that the validity of the third and fourth sections is in doubt; that the fifth section is of doubtful construction ; that the sixth section conveys more than three-fourths of the estate of the testatrix.

The complaint does not aver that there is any doubt or disagreement between Carrie and the executors as to their duty under the trust created for her life. It does not aver that they have refused to apply as much of the income as is necessary to her support, etc., or even that they have not applied the whole thereof to these purposes.

The plaintiffs' counsel urges that as the executors, during Carrie's minority, are to apply only enough of the income as is necessary to support and educate her, a question arises what they are to do with the excess. It is not averred that there is any excess, or that the executors have not spent the whole income on Carrie's support.

Further, this is the ordinary form of a trust, viz.: to apply the rents and profits to the use of a person. (*Moore* v. *Hegeman*, 72 N. Y., 376.) It was never supposed that such a trust required, in case of a minor, the expenditure of more than was needed. The executors do not claim that Carrie is not entitled to the whole of the income. They make not the least denial of her right. Any surplus will come to her in possession on her arriving at full age, whether there be accumulation directed or not. (*Pray* v. *Hegeman*, 92 N. Y., 508; *Barbour* v. *De Forest*, 95 id., 13.) There is no direction that the surplus, if any, shall be turned into capital. We see no disagreement between the executors and Carrie and no uncertainty as to the provisions of the trust, which should justify this action by Carrie.

The plaintiffs' counsel again urges that there is doubt as to the fourth clause; insisting that by the use of the words "my death" the testatrix limited the gift to Carrie's children to the case of seeing them before her death. We do not think it best to do more than refer to the probability that these words are an error for "her death." But, at any rate, the meaning of that clause is not one in which this plaintiff Carrie is interested. That clause disposes only of the remainder after Carrie's death. Whether the remainder goes to one person or another is nothing to her. Furthermore, the persons to whom the remainder will go are not now in existence. And it is very undesirable that the court should decide on a question where the interested parties are not before it. There is no present duty for the executors under that clause. Difficulties should not be anticipated. If Carrie should leave children living at her death, no question will arise as to the words "my death." Again, plaintiff's counsel urges that the fifth clause, or so much as gives property in trust for the poor of Malone, is void. Very possibly. But the condition on which that bequest is given may never arise. If it should arise that will be after Carrie's trust estate shall have ceased. So, too, it is urged that as to one-half of the bequest to the Congregational Society, it is void under chapter 369, Laws 1860. Admitting that to be true, it cannot, at this time, be determined whether the one-half of the remainder in the estate, after the trust for Carrie's life, will prove, at her death, to be undisposed of or not. If she shall

leave children living at her death, then clauses fifth and sixth do not take effect. Probably the same is true if she shall leave descendants. At any rate it will not be until her death that it will be certain whether or not by the terms of the will, without regard to the statute, the legacy in the fifth clause takes effect. If it should then take effect according to the terms of the will, and it should be held, as against the Congregational Society, that that society could take only one-half, that question could be raised by the heirs and next of kin of the testatrix. If such heirs and next of kin are those who would be such at the time when the legacy was to take effect; then Carrie is not interested. If, on the other hand, Carrie, as now the heir and next of kin, claims to own the one-half of the remainder, after her trust life estate, on the ground of the invalidity of the contingent legacy to the Congregational Society, and in case she should die without descendants, still there is no need for any construction of the will as to her. Because in no event will the executors have any duty to discharge towards her. And whether, if she should die without descendants, the one-half of the legacy to the Congregational Society should go to her legatee or grantee, or to the remoter relatives of the testatrix, is a matter which need not now be determined. The language of the court in *Wager* v. *Wager* (*ut supra*), shows that the action to construe a will is sustained where it is necessary to control or guide the action of a trustee. No such control or guidance is now needed. None as to this sixth clause ever will be, except on a contingency; and not then if the interested parties agree.

There are allegations in the complaint that doubt exists as to the fifth and sixth clauses. But there are no allegations that the executors claim one view and that the plaintiffs claim another. And, on the argument of the case, it appears that the executors do not assert the validity of clause fifth, nor the validity of the sixth as to one-half. No disagreement appears as to the first and second clauses; and we understand that none exists. There are no allegations in the complaint of facts on which doubt could arise under the third clause; and we see no difficulty which needs construction. If any question shall arise under the fourth clause as to the words "*my* death" (which seems to us improbable), that can be settled when the parties in interest shall be in existence. At present we

think that the plaintiff Carrie shows in this complaint no occasion to ask a construction of the will.

We have not been able to see any ground why the guardian of Carrie should join as plaintiff. He has no interest in the matter. As an infant she should bring her action by her guardian *ad litem*, as she has done. She has no estate in the trust but only the right to enforce it. Her guardian has nothing to do with the matter. We think the demurrer properly sustained.

The learned justice before whom the cause was tried gave the defendants' costs, to be paid by the executor out of the income and profits of the real and personal property held by him in trust for the plaintiff Carrie. This seems to us unjust and, perhaps, contrary to the statute. (1 R. S., m. p. 730, § 63.) The costs of a successful action to construe the will might properly come out of the estate, but even then rather out of the body of the estate than out of the income specially appropriated. The action being unsuccessful, costs should be paid by the plaintiffs. The guardian *ad litem* being responsible for costs recovered against the infant plaintiff. (Code, § 469.) We think the extra allowance was properly granted.

With the modification above indicated the judgment should be affirmed, with costs; not, however, on the ground of want of jurisdiction.

Present — LEARNED, P. J., BOOKES and LANDON, JJ.

Judgment modified by requiring costs to be paid by plaintiffs, and as modified affirmed, with costs.